THE HONORABLE THOMAS S. ZILLY

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

POLYGON NORTHWEST COMPANY,

                Plaintiff,

vs.

NATIONAL FIRE AND MARINE
INSURANCE COMPANY,

                Defendant.

No.  C11-92Z

ORDER

THIS MATTER comes before the Court on the motion for partial summary

judgment filed by defendant National Fire & Marine Insurance Company ("NFM"),

docket no. 9.  Having reviewed the papers filed in support of, and opposition to,

NFM's motion, the Court enters the following Order.

I.      **<u>BACKGROUND</u>**

      Plaintiff Polygon Northwest Co., LLC ("Polygon") is a Washington limited

liability company, with its principal place of business located in Bellevue,

Washington.  Compl. at ¶ 1, docket no. 2-1; see also Jacobi Decl., Ex. F, docket no. 10.  Non-party Wood Mechanix, LLC ("Wood Mechanix") is an Oregon limited liability company that does business as a subcontractor on residential construction projects.  Jacobi Decl., Exs. B, N, docket no. 10.

On November 29, 2005, general contractor Tasbourne Place Townhomes, LLC, ("Tasbourne") entered into a contract with Wood Mechanix (the "Subcontract") pursuant to which Tasbourne agreed to pay Wood Mechanix to construct townhomes on property owned by Polygon,[1] in Hillsboro, Oregon.  Id.; see also Compl. at ¶ 3, Appx. A, docket no. 2-1.

Wood Mechanix agreed to obtain general liability insurance (minimum $2,000,000.00 policy limit), automobile liability insurance (minimum $1,000,000.00 policy limit) and Oregon Worker's Compensation Insurance (in the amount required by Oregon law).  See Jacobi Decl., Ex. R at Ex. C ¶ 2., docket no. 10.  The Subcontract also obligated Wood Mechanix to ensure that Polygon was identified as an additional insured on the insurance policies.  Id. at ¶ 2.3(a).  In requiring the additional coverage, the parties agreed that:

> It is the intent of this paragraph that [Wood Mechanix's] insurer provide the above coverage to the fullest extent permitted by ORS 30.140.  To the extent any provision of this Section . . . would otherwise be considered void under ORS 30.140, such provision shall be deemed to require the most extensive coverage permitted under ORS 30.140 and not more.

---

[1] Polygon also acted as the project manager and signed the Subcontract as Tasbourne's principal.  Jacobi Decl., Ex. R, docket no. 10.

Jacobi Decl., Ex. R at Ex. C ¶ 2.8, docket no. 10.  Wood Mechanix applied for an insurance policy through its Oregon insurance broker, AON Risk Services of Oregon ("AON").  Jacobi Decl., Ex. C, docket no. 10.  AON submitted the application to NFM, a Nebraska-based insurer.  See id. Ex. A.  NFM approved the application and issued Wood Mechanix a general liability insurance policy, number 72LPE706901 (the "Policy"), on December 9, 2005.  Id.  The Policy provided for limited coverage at two specific construction sites where Wood Mechanix had already commenced work, and "[a]ny new projects where the work performed by any 'insured' . . . first commences during the policy period."[2]  Id.

On February 6, 2006, an employee of Wood Mechanix, Arthur Yeatts, was injured while working on the Tasbourne/Polygon construction project.  Id. Ex. E. More than two years later, on April 8, 2008, Mr. Yeatts brought a lawsuit against Polygon in Oregon state court, seeking to recover damages for the injuries he sustained while working for Wood Mechanix at the Polygon construction site in Hillsboro, Oregon.  Id.

On December 1, 2009, Polygon's Oregon counsel, Ball Janik, LLP, sent a letter to NFM, claiming coverage under the Policy as an additional insured, and tendering the defense of the Yeatts litigation.  Id. Ex. G.  NFM reviewed the Policy, could not locate an endorsement identifying Polygon as an additional insured, and on January

---

[2] It is not clear from the current record when the Tasbourne/Wood Mechanix construction project at issue in this case commenced, and by extension, whether the disputed Policy covered work performed at that location.  For purposes of the present motion, the Court assumes that the Policy applies.

21, 2010, declined to accept the tender.  Id. Ex. H.  On October 8, 2010, Polygon responded to NFM's denial letter from its offices in Bellevue, Washington, and forwarded a copy of a Policy endorsement purporting to name Polygon as an additional insured.  Id. Ex. I.

After receiving the endorsement, NFM reopened its investigation on October 13, 2010, and hired the Oregon firm of Farrell & Associates to perform the investigation.  Id. Exs. J-K.  On November 2, 2010, Farrell & Associates recommended that NFM deny the claim for coverage.  Id. Ex. L.  NFM denied Polygon's claim for a second time on December 8, 2010.  Id. Ex. P.

On December 15, 2010, Polygon initiated this lawsuit in Washington State Superior Court, alleging that NFM's refusal to accept the tender of defense constituted a violation of Washington's Insurance Fair Conduct Act ("IFCA"),[3] Consumer Protection Act ("CPA"), and various Washington insurance regulations.  Compl., docket no. 2-1.  Polygon also brought common law claims for breach of contract, negligence, and coverage by estoppel.  Id.

---

[3] An insured may not bring an IFCA claim unless the insured has first given notice of the claim to its insurer and provided the insurer with twenty days to cure.  RCW 48.30.015(8)(a).  On December 10, 2010, Polygon sent a notice to NFM and the Washington Insurance Commissioner of its intent to bring an IFCA claim.  Jacobi Decl., Ex. Q, docket no. 10.  After sending the notice, Polygon waited only five days before filing suit and bringing its present IFCA claim.  Compl., docket no. 2-1. Accordingly, in the alternative, the IFCA claim is DISMISSED because Polygon failed to comply with the IFCA's statutory notice requirements.

## II.   <u>DISCUSSION</u>

### A.     **Summary Judgment Standard**

The Court shall grant summary judgment if no genuine dispute of material fact exists and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a) (2010).  The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).  A fact is material if it might affect the outcome of the suit under the governing law.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  In support of its motion for summary judgment, the moving party need not negate the opponent's claim, <u>Celotex</u>, 477 U.S. at 323; rather, the moving party will be entitled to judgment if the evidence is not sufficient for a jury to return a verdict in favor of the opponent, <u>Anderson</u>, 477 U.S. at 249.  To survive a motion for summary judgment, the adverse party must present affirmative evidence, which "is to be believed" and from which all "justifiable inferences" are to be favorably drawn.  <u>Id.</u> at 255, 257.  When the record taken as a whole, could not lead a rational trier of fact to find for the non-moving party, summary judgment is warranted.  <u>See</u>, <u>e.g.</u>, <u>Beard v. Banks</u>, 548 U.S. 521, 529 (2006).

### B.     **NFM's Motion is Not Premature**

NFM moves for partial summary judgment, arguing that the Court should apply Oregon law to this dispute and further dismiss Polygon's Washington law claims

for violation of the IFCA, violation of the CPA, and coverage by estoppel because Oregon law does not provide for similar causes of action.

Polygon devotes a substantial portion of its response to its argument that NFM's motion is premature. Specifically, Polygon contends that the substantive law that applies to its claims is irrelevant until the Court first determines whether Polygon is an insured under the Policy.[4] However, under Fed. R. Civ. P. 56(b), "a party may file a motion for summary judgment at any time until 30 days after the close of all discovery." (emphasis added). Such a motion may be directed at any claim or defense, or any part of a claim or defense, that the moving party chooses. Fed. R. Civ. P. 56(a). Accordingly, NFM's motion is not premature.

## C.    Choice of Law Rules

This is a diversity action under 28 U.S.C. § 1332. See Not. of Removal at ¶ 6, docket no. 1. Federal courts sitting in diversity must apply the forum state's choice of law rules to determine the controlling substantive law. Fields v. Legacy Health Sys., 413 F.3d 943, 950 (9th Cir. 2005) (quoting Patton v. Cox, 276 F.3d 493, 495 (9th Cir.

---

[4] When NFM took the same position earlier in the case, and proposed that the parties stay discovery on Polygon's statutory and extra-contractual claims pending a determination on the coverage issue, Polygon rejected NFM's proposal and demanded that discovery proceed simultaneously on all of its claims because "Polygon's allegations of bad faith and other violations of statutory and administrative law are interwoven with the issue of whether Polygon was an additional insured under the Policy issued by NFM." Joint Status Report, docket no. 8. Polygon cannot now contend that resolution of the applicable substantive law is premature or inefficient prior to resolution of the coverage issue.

2002)).  Accordingly, the Court applies Washington's choice of law rules to determine which state's substantive law applies.

In Washington, choice of law disputes require a two-step inquiry.  First, the Court must determine whether there is an actual conflict between the laws or interests of Washington and the laws or interests of another state.  <u>Seizer v. Sessions</u>, 132 Wn.2d 642, 648, 940 P.2d 261 (1997).  An actual conflict exists when the result of the issues is different under the law of the two states.  <u>Id.</u>  If there is no actual conflict, the presumptive local law applies.  <u>Erwin v. Cotter Health Ctrs.</u>, 161 Wn.2d 676, 692, 167 P.3d 1112 (2007).

In addition, Washington follows the rule of dépeçage, which may require the Court to apply the law of one forum to one issue, while applying the law of a different forum to another issue in the same case.  <u>Brewer v. Dodson Aviation</u>, 447 F. Supp. 2d 1166, 1175 (W.D. Wash. 2006); <u>Williams v. State</u>, 76 Wn. App. 237, 241, 885 P.2d 845 (1994) ("[C]hoice-of-law depends upon which of two or more jurisdictions has the 'most significant relationship' to <u>a specific issue</u>.") (emphasis added).  Accordingly, the Court must perform an issue-by-issue review of Polygon's claims to determine whether each claim presents an actual conflict between the laws of Washington and Oregon.

If the Court concludes that there is an actual conflict between the law of the two states on any given issue, then the Court must move on to the second step of the analysis, and determine which jurisdiction has the "most significant relationship" to

the particular issue.  <u>Seizer</u>, 132 Wn.2d at 650.  Washington courts have adopted the restatement tests for determining which jurisdiction has the "most significant relationship" to the occurrence and the parties.  <u>See</u> <u>Rice v. Dow Chem. Co.</u>, 124 Wn.2d 205, 213, 875 P.2d 1213 (1994) (applying RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145 to tort dispute); <u>Mulcahy v. Farmers Ins. Co. of Wash.</u>, 152 Wn.2d 92, 100-01, 95 P.3d 313 (2004) (applying RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 188 to contract dispute).

**D.    Step One: Actual Conflicts**

Under the rule of dépeçage, the Court must separately determine whether there is an actual conflict between Washington and Oregon law on Polygon's claims for (1) breach of contract; (2) negligence; (3) violation of the IFCA; (4) violation of the CPA; and (5) coverage by estoppel.

1.    <u>Polygon's claims for Breach of Contract and Negligence</u>

Neither party offers any authority or argument from which the Court can conclude that the validity of Polygon's breach of contract and negligence claims depends upon which state's law is applied.  Accordingly, because the parties have not adequately briefed the conflict issue as to Polygon's breach of contract and negligence claims, the Court DENIES in part, without prejudice, NFM's motion as to those claims.  <u>See</u> <u>Erwin</u>, 161 Wn.2d at 692.

2.      There is an Actual Conflict Between Washington and Oregon
Law on Polygon's IFCA Claim

Polygon's IFCA claim is predicated on NFM's alleged bad faith refusal to

accept the tender of defense of the <u>Yeatts</u> litigation.  <u>See</u> Compl. at ¶ 8, docket no. 2-1;

<u>see</u> <u>also</u> RCW 48.30.015(1) (providing a cause of action to an insured for an insurer's

unreasonable denial of coverage or benefits).  In addition, Polygon contends that NFM

is liable for treble damages under the IFCA for NFM's alleged violations of

Washington insurance regulations.  Compl. at ¶¶ 7, 14, docket no. 2-1; <u>see also</u> RCW

48.30.015(2) (providing that a court may award treble damages for an insurer's

unreasonable denial of coverage or benefits under RCW 48.30.015(1), if the court also

finds that the insurer violated Washington's insurance regulations).[5]

In Oregon, the most analogous statute to Washington's IFCA is the Oregon

Unfair Claims Settlement Practices Act ("UCSPA").[6]  Like the IFCA and its

---

[5] For purposes of an IFCA claim, violations of Washington's insurance regulations are
only relevant in determining whether an award of treble damages is appropriate
because violations of the regulations do not give rise to an independent cause of action
under the IFCA.  <u>Weinstein & Riley, P.S. v. Westport Ins. Corp.</u>, 2011 WL 887552 at
*30 (W.D. Wash. 2011) (Robart, J.).

[6] Polygon argues that Oregon has no statute that is truly analogous to the IFCA, and
therefore, that there is no "conflict" between the laws of Washington and Oregon.
Resp. at 7, docket no. 13.  The dispositive question is not, however, whether Oregon
has an analogous statute.  The pertinent question is <u>whether the results of the litigation
would be different under the laws of Washington and Oregon</u>.  <u>See</u> <u>Seizer</u>, 132 Wn.2d
at 649.  Thus, for example, in <u>Seizer</u>, the Washington Supreme Court held that an
actual conflict existed between the laws of Washington and Texas, where Texas did
not have a statute that was analogous to the Washington statute that would otherwise
apply under the facts of that case.  <u>Id.</u> at 649-50.  Accordingly, the Court rejects
Polygon's contention that the absence of a comparable statute eliminates any actual
conflicts.

implementing regulations, the UCSPA prohibits a variety of unfair trade practices.

Compare ORS § 746.230 with RCW 48.30.010; WAC 284-30-330, -360 to -380.

However, although the IFCA creates a private cause of action for an insurer's unfair

trade practices, see RCW 48.30.015(1), the UCSPA does not.  Richardson v. Guardian

Life Ins. Co. of Am., 161 Or. App. 615, 623-24, 984 P.2d 917 (1999) (affirming the

trial court's dismissal of plaintiff's UCSPA claims on summary judgment "because

violations of that act are not independently actionable.") (citing Farris v. United States

Fid. & Guar. Co., 284 Or. 453, 458, 587 P.2d 1015 (1978)).

Moreover, although Washington law prohibits insurers from refusing to defend

in bad faith, under Oregon law, an insurer's refusal to defend does not give rise to a

tort claim for bad faith.  See Warren v. Farmers Ins. Co. of Or., 115 Or. App. 319, 326,

838 P.2d 620 (1992).  Accordingly, there is an actual conflict between the laws of

Washington and Oregon on Polygon's IFCA claim.

        3.      There is an Actual Conflict Between Washington and Oregon
                 Law on Polygon's CPA Claim

Violations of Washington's insurance regulations, such as the violations alleged

in Polygon's complaint, constitute per se unfair or deceptive trade practices under the

CPA.  Tank v. State Farm Fire & Cas. Co., 105 Wn.2d 381, 394, 715 P.2d 1133

(1986).

Conversely, under Oregon's CPA equivalent, the Unfair Trade Practices Act

("UTPA"), matters relating to insurance are expressly excluded from unfair trade

practices.  ORS § 646.605(6); see also Steven W. Bender, Oregon Consumer

Protection:  Outfitting Private Attorneys General for the Lean Years Ahead, 73 OR. L.
REV. 639, 656 n.101 (1994) (noting that "insurance was expressly excluded from the
UTPA presumably because unfair insurance practices were already regulated by
Oregon's Department of Commerce.").  Thus, the outcome of Polygon's CPA claim
would be different under Oregon law, where violations of insurance regulations are not
unfair or deceptive acts that are actionable under the UTPA.  As such, there is an
actual conflict between Washington and Oregon law on Polygon's CPA claim.

           4.      There is an Actual Conflict Between Washington and Oregon
                    Law on Polygon's Coverage by Estoppel Claim

In Washington, when an insurer breaches its duty to defend in bad faith, the
insurer is estopped from asserting that the insured's claim is outside the scope of the
insurance contract.  Kirk v. Mt. Airy Ins. Co., 134 Wn.2d 558, 564, 951 P.2d 1124
(1998).  The Washington Supreme Court adopted such "coverage by estoppel" for
public policy reasons, because it creates a strong incentive for the insurer to act in
good faith.  Id.

In Oregon, the courts have taken the opposite approach.  Thus, in Timberline
Equip. Co. v. St. Paul Fire & Marine Ins. Co., 281 Or. 639, 646, 576 P.2d 1244 (1978),
the Oregon Supreme Court rejected the insured's argument that the insurer's breach of
the duty to defend estopped the insurer from relying on the terms of the policy.
Instead, the court held that "[w]hen a contract is breached, the injured party is entitled
to receive what he would have if there had been no breach; he is not entitled to receive
more."  Id.  Accordingly, as Oregon courts have rejected the tort claim of "coverage by

estoppel," and there is an actual conflict between the laws of Washington and Oregon on that claim.

**E.      Step Two:  Most Significant Relationship**

As there is an actual conflict between the laws of Washington and Oregon on Polygon's CPA, IFCA, and coverage by estoppel claims, the Court must engage in the second step of the conflicts analysis and determine which state has the most significant relationship to the parties and the claims.  As all of the conflicted claims sound in tort,[7] the Court must take the following contacts into account in determining the applicable law:

(a)      the place where the injury occurred;

(b)      the place where the conduct causing the injury occurred;

(c)      the domicil, residence, nationality, place of incorporation and place of business of the parties; and

(d)      the place where the relationship, if any, between the parties is centered.

RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145.  "These contacts are to be evaluated according to their relative importance with respect to the particular issue," and are to be considered while applying the "principles of the RESTATEMENT

---

[7] See Carideo v. Dell, Inc., 706 F. Supp. 2d 1122, 1128 (W.D. Wash. 2010) ("Washington courts follow Restatement section 145 to determine what law applies to tort and CPA claims."); see also Woo v. Fireman's Fund Ins. Co., 150 Wn. App. 158, 172, 208 P.3d 557 (2009) (holding that a claim for coverage by estoppel sounds in tort).

(SECOND) OF CONFLICT OF LAWS § 6."[8]   RESTATEMENT (SECOND) OF CONFLICT OF

LAWS § 145.  The Court's "approach is not merely to count contacts, but rather to

consider which contacts are most significant and to determine where these contacts are

found."  Johnson v. Spider Staging Corp., 87 Wn.2d 577, 581, 555 P.2d 997 (1976).  If

the contacts are evenly balanced, the court may consider the interests and public

policies of the concerned states.  Myers v. Boeing Co., 115 Wn.2d 123, 133, 794 P.2d

1272 (1990).

      In this case, the overwhelming majority of the relevant contacts and conduct

took place in Oregon.  Polygon's injury, the cost associated with having to defend

---

[8] The relevant principles set forth in Section 6 include:

    (a)    the needs of the interstate and international systems;

    (b)    the relevant policies of the forum;

    (c)    the relevant policies of other interested states and the relative
            interests of those states in the determination of the particular
            issue;

    (d)    the protection of justified expectations;

    (e)    the basic policies underlying the particular field of law;

    (f)    certainty, predictability and uniformity of result; and

    (g)    ease in the determination and application of law to be applied.

RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 6.  "Washington courts focus on the
4 contacts in Section 145 over these principles in Section 6 when conducting a choice
of law analysis."  Brewer, 447 F. Supp. 2d at 1176 n.4.

itself in the <u>Yeatts</u> litigation in Oregon state court,[9] took place in Oregon.  <u>See</u> Jacobi

Decl. Ex. E, docket no. 10.  All of the conduct causing the injury took place in

Nebraska and Oregon, where NFM denied the claim and performed the allegedly

deficient investigation.  <u>See id.</u> Exs. H, J-M, P.  Most importantly, the relationship

between the parties is centered in Oregon, where: (1) Wood Mechanix, an Oregon

company, sought insurance through an Oregon insurance broker, <u>id.</u> Ex. C; (2) Wood

Mechanix entered into the insurance contract with NFM, <u>id.</u> Ex. A; (3) Polygon

entered into the Subcontract with Wood Mechanix, which required Wood Mechanix to

have Polygon named as an additional insured, <u>id.</u> Ex. R; (4) the construction site was

located, <u>Id.</u>, Ex. E;  (5) the injury to Mr. Yeatts occurred, <u>id.</u>; and (6) the underlying

<u>Yeatts</u> case is being litigated.  <u>Id.</u>

Conversely, the only significant contact with Washington is Polygon's

incorporation here.[10]  Jacobi Decl., Ex. F, docket no. 10.  Addressing a case with a

similar dearth of Washington contacts, the Washington Supreme Court held that

"residence in the forum state alone has not been considered a sufficient relation to the

---

[9] Although Polygon contends that it was injured in Washington because that is where it
received NFM's denial of coverage, the Court is not persuaded by that argument.  The
"injury" sustained by Polygon is the cost incurred in defending itself in the <u>Yeatts</u>
litigation, currently proceeding in Oregon state court.  That injury necessarily arose in
Oregon.

[10] There was some minimal correspondence between Polygon's Bellevue office and
NFM in Nebraska.  <u>See</u> Jacobi Decl., Exs. I-J, M-N, P.  This correspondence first
commenced in October 2010, two months before this litigation commenced, and
nearly nine months after NFM first denied Polygon's claim.  <u>See id.</u> Ex. I.  These
minimal contacts are insignificant when compared with the parties' Oregon contacts,
and the Court has given them little weight.

action to warrant application of forum law." <u>Rice</u>, 124 Wn.2d at 216.  Here, as in

<u>Rice</u>, the only contact with Washington is Polygon's residence in the state, which is

insufficient to warrant application of Washington law.

Nonetheless, Polygon argues that the Court must also consider that Washington

has a strong interest in having its law apply in this context because the state has a

stated policy of protecting consumers from insurers' bad faith insurance practices.  <u>See</u>

RCW 48.01.020-.030.  However, as the Court has concluded that the contacts between

Oregon and Washington are not evenly balanced, and indeed tip sharply in favor of

Oregon, the Court may not look at which forum has a greater interest in the matter.

<u>See</u> <u>Myers</u>, 115 Wn.2d at 133 (holding that the Court may only examine the competing

state interests if the contacts are evenly balanced).[11]

---

[11] In addition, the principles set forth in restatement Section 6 weigh heavily in favor
of applying Oregon law.  For example, the record reflects that it was the parties'
expectation that Oregon law would apply to any dispute.  The Subcontract between
Polygon and Wood Mechanix provided that "[i]t is the intent of this paragraph that
[NFM] provide the above [insurance] coverage to the fullest extent permitted by ORS
30.140."  Jacobi Decl. Ex. R at Ex. C ¶ 2.8, docket no. 10.  This provision of the
Subcontract indicates Polygon's clear intent that Oregon law should apply to the
insurance policy.  NFM had a similar expectation that Oregon law would apply, given
that it was presented with the insurance request for an Oregon subcontractor (Wood
Mechanix), by an Oregon insurance broker (AON), for work performed at an Oregon
construction site.  Accordingly, preserving the reasonable expectations of the parties
weighs heavily in favor of applying Oregon law.  Moreover, Oregon has a stated
interest in preserving the reasonable expectations of the parties.  <u>See</u> <u>Timberline
Equip. Co.</u>, 281 Or. at 646 (court preserved the parties' contractual expectations by
rejecting insured's tort claim for coverage by estoppel; otherwise, the injured party
would receive more than he would have been entitled to had there been no breach); <u>see
also</u> <u>Warren</u>, 115 Or. App. at 326 ("If an insurer does not defend a claim, and thereby
breaches its contract with the insured, its liability, if any, <u>is only for breach of contract,
not for tort.</u>") (emphasis added).

ORDER - 15

Accordingly, the Court concludes that the factors set forth in the restatement demonstrate that the state of Oregon has the most significant relationship to the occurrence and the parties.  Therefore, the Court GRANTS in part NFM's motion, and holds that Oregon law applies vis-à-vis Polygon's IFCA, CPA, and coverage by estoppel claims.  As Oregon law does not provide for analogous relief, the Court further DISMISSES with prejudice Polygon's IFCA, CPA, and coverage by estoppel claims.

## III.   CONCLUSION

For the foregoing reasons, the Court GRANTS in part and DENIES in part NFM's motion for partial summary judgment, docket no. 9.  The Court GRANTS in part the motion and holds that Oregon law applies to Polygon's IFCA, CPA, and coverage by estoppel claims.  As Oregon law does not provide for similar claims, the Court further DISMISSES those claims with prejudice.

However, as the parties have not adequately briefed the conflict issue on Polygon's only two remaining claims, breach of contract and negligence, the Court DENIES in part NFM's motion as to these claims, without prejudice, and DECLINES, at this time, to determine which state's law applies to these claims.

IT IS SO ORDERED.

DATED this 24th day of May, 2011.

Thomas S. Zilly
United States District Judge

ORDER - 16